UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL A. SILMON,

        Plaintiff,

  v.

NANCY BERRYHILL, COMMISSIONER
OF SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

17-CV-667

Decision & Order

On July 19, 2017, the plaintiff, Michael Silmon, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On April 11, 2018, Silmon moved for judgment on the pleadings, Docket Item 13, and on June 8, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 17.

For the reasons stated below, this Court grants Silmon's motion in part and denies the Commissioner's cross-motion.

**BACKGROUND**

I. **PROCEDURAL HISTORY**

On April 4, 2014, Silmon applied for Supplemental Security Income benefits. Tr. 105.[1] He claimed that he had been disabled since February 7, 1996, due to attention deficit hyderactivity disorder ('ADHD") and a learning disability. Tr. 120.

On April 30, 2014, Silmon received notice that his application was denied because he was not disabled under the Act. Tr. 18. He requested a hearing before an administrative law judge ("ALJ"), Tr. 55, which was held on July 31, 2015, Tr. 18. The ALJ then issued a decision on November 3, 2015, confirming the finding that Silmon was not disabled. Tr. 28. Silmon appealed the ALJ's decision, but his appeal was denied, and the decision then became final. Tr. 5.

II. **THE ALJ'S DECISION**

In denying Silmon's application, the ALJ evaluated Silmon's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is

---

[1] Citations to "Tr." refer to pages in the transcript, which is maintained in paper form in the Clerk of Court's file.

not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one the ALJ determined that Silmon had not engaged in substantial gainful employment since the alleged disability onset date. Tr. 21. At step two, the ALJ found that Silmon had several severe impairments: ADHD, an organic mental disorder, and a substance addiction disorder. *Id.* At step three, the ALJ determined that Silmon had no impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ found that Silmon had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine tasks with 1-2 steps and an SVP of 2 or lower; he is able to have contact with co-workers and supervisors frequently and the general public occasionally; he is not able to perform math above the four operations or using more than double digits.

Tr. 23-24. Finally, at step five, the ALJ determined that jobs exist in significant numbers in the national economy that Silmon can perform with his RFC, such as cleaner or kitchen helper. Tr. 27.

## **LEGAL STANDARDS**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d

4

108, 112 (2d Cir. 2009).  In other words, a district court does not review a disability determination de novo.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## **DISCUSSION**

### I.     ALLEGATIONS

Silmon objects to the ALJ's RFC finding, his analysis of Silmon's substance abuse, and his analysis of severe impairments at step three.  Docket Item 13-1 at 4-5.  He specifically argues that the ALJ erred by failing to consider Listing 12.05(c) for mental retardation.  *Id.* at 4.

### II.    ANALYSIS

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listings impairment.  20 C.F.R. § 416.920(d).  To meet an impairment in the listings, the claimant's impairment "must meet all of the specified medical criteria" of a listing.  *Barber v. Comm'r of Soc. Sec.*, 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  An impairment also may be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."  *Id.*  (citation omitted).

An ALJ must explain why an impairment failed to meet or equal one in the listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation omitted).  The Court "cannot . . . conduct a review that is both

5

limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Raymond v. Comm'r of Soc. Sec.*, 357 F.Supp.3d 232, 237 (W.D.N.Y. 2019) (citation omitted). "Nevertheless, an ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." *Yeomas v. Colvin*, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (citation, quotation marks, and alterations omitted); *see also Berry v. Schweiker*, 675 F.2d 464, 468-69 (2d Cir. 1982) (affirming step three decision even though ALJ did not set forth a specific rationale "since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence").

**A. Listing 12.05(c)**

Listing 12.05(c) defines "Intellectual disability" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *See* 20 C.F.R. Part 404, Subpart P, App'x 1 at § 12.05 (effective Aug. 12, 2015 to May 23, 2016).[2] If the claimant's impairment satisfies this diagnostic description and one of four sets of criteria—specified in paragraphs A through D—the impairment meets the listing. *Id.* Those criteria are:

---

[2] The ALJ rendered his decision on November 3, 2015, and this version therefore is the relevant version of Listing 12.05 for evaluating the severity of Silmon's mental impairment. On September 26, 2016, the Social Security Administration finalized new regulations revising this portion of its listings, which became effective on January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). But the new regulations preclude their retroactive application: "We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at 66138 n.1.

6

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration.

*Id.*

To meet the requirements of paragraph C, a claimant must establish: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) another severe physical or mental impairment." *Green v. Colvin*, 2016 WL 943620, at *9 (W.D.N.Y. 2016) (citation omitted).

Here, Silmon argues that the ALJ erred in "not address[ing] § 12.05, for mental retardation" because he "satisfies all of the prongs of 12.05(c)." Docket Item 13-1 at 4. In response, the Commissioner does not dispute that Silmon had a valid I.Q. score between 60 and 70 and another mental impairment imposing an additional and significant work-related limitation. Docket Item 17-1 at 17. But the Commissioner maintains that Silmon "did not have the necessary deficits in adaptive functioning" and therefore does not meet this listing. *Id.*

7

### B. Deficits in Adaptive Functioning

To demonstrate an intellectual disability under § 12.05(c), "claimants also must satisfy a diagnostic description contained in the introductory paragraph of that section by making a threshold showing that they suffer from significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22." *Brothers v. Colvin*, 233 F. Supp. 3d 320, 327 (N.D.N.Y. 2017) (citations and internal quotation marks omitted).

> Adaptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life. Accordingly, courts have held that if one is able to satisfactorily navigate activities such as living on one's own, taking care of . . . children . . . without help . . . sufficiently well that they have not been adjudged neglected, **paying bills**, and avoiding eviction, one does not suffer from deficits in adaptive functioning. While a qualifying IQ score may be *prima facie* evidence that an applicant suffers from significantly subaverage general intellectual functioning, § 12.05, there is no necessary connection between an applicant's IQ scores and her relative adaptive functioning.

*Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (internal quotation marks, alterations, and citations omitted) (emphasis added).

The Commissioner argues that the evidence of Silmon's daily activities demonstrates that he did not have the necessary deficits in adaptive functioning. Docket Item 17-1 at 17-18. For example, the Commissioner notes that Silmon was able to maintain a relationship with his girlfriend, spend time with his friends, use public transportation, maintain his personal care, prepare simple meals, play video games, and shop for groceries. *Id.* at 18. But the ALJ failed to explicitly analyze Listing 12.05(c), instead simply concluding that its criteria were not satisfied. Tr. 23. What is more, in his step three analysis, the ALJ did not address the evidence that might support that listing: for example, that Silmon attended special education classes, Tr.

8

206, 447; showed difficulty completing his assignments and struggled with reading, Tr. 209; dropped out of school around the tenth grade, Tr. 446; repeated a grade, Tr. 466; could not get his General Education Diploma, Tr. 467; had been in treatment for mental health since he was six or seven years old, Tr. 448; and, perhaps most significantly, relied on his aunt to manage "the paying of everything," Tr. 454. Although when formulating Silmon's RFC the ALJ cited the opinion from consultative examiner Christine Ransom, Ph.D.—that Silmon had "a mild cognitive difficulty in the borderline range which will not significantly interfere with the claimant's ability to function on a daily basis"—he did not consider that as part of his step three analysis or address how that opinion might bear on Silmon's adaptive functioning for Listing 12.05(c), either alone or in light of other evidence of Silmon's cognitive disabilities.

Although an ALJ's unexplained step three conclusions may be upheld if they are supported by substantial evidence, "where the evidence on the issue of whether a claimant meets or equals the listing requirements is [in] equipoise and credibility determinations and inference drawing is required of the ALJ to form his conclusions at step [three], the ALJ must explain his reasoning." *Green*, 2016 WL 943620, at *8 (alterations in original) (citations and internal quotation marks omitted); *see also Carpenter v. Comm'r of Soc. Sec.*, 2014 WL 859160, at *4 (N.D.N.Y. Mar. 5, 2014) ("[W]hile the ALJ clearly did not believe that the record as a whole supported a diagnosis of mild mental retardation, she failed to specifically address deficits in adaptive functioning—or the listing 12.05(c) requirement of suffering an additional significant limitation—and this is not a situation [w]here application of the correct legal standard could lead to only one conclusion.") (citations and internal quotation marks

9

omitted). That is the situation here. And because the ALJ did not explain his reasoning, remand is required.

The Commissioner argues that the "state agency medical consultants and Dr. Ransom were aware of these factors when they found that he functioned in the low average range" and when they opined that Silmon "did not meet or equal any listing-level impairment." Docket Item 17-1 at 18. But that argument is nothing more than an impermissible *post hoc* rationalization of the ALJ's decision. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'") (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The ALJ did not explain why Silmon failed to meet listing 12.05(c), and the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See id.*

Because it appears that Silmon may meet Listing 12.05(c), the ALJ was obligated to explain why he concluded otherwise. *See Rockwood*, 614 F. Supp. 2d at 273. But the ALJ's decision lacks "an accurate and logical bridge from the evidence to [his] conclusion," and the Court therefore cannot conduct a meaningful review. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012). And the remainder of the ALJ's decision does not permit the Court to "glean the rationale" behind his conclusion. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When ... the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

In light of the ALJ's failure to address this issue, this Court cannot evaluate whether substantial evidence supports the ALJ's finding that Silmon failed to demonstrate the necessary deficit in adaptive functioning. Stated another way, the ALJ's failure to specifically address the requirements of Listing 12.05(c) constitutes legal error. Therefore, the matter is remanded so that the ALJ can specifically address and analyze whether Silmon demonstrated a deficit in adaptive functioning with an onset before age 22.[3] If the ALJ still finds that Silmon's impairment does not meet Listing 12.05(c), he must give clear reasons why.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Silmon's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:  June 11, 2019
        Buffalo, New York

                                         *s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE

---

[3] Because the "remaining issues ... may be affected by the ALJ's treatment of this case on remand," this Court does not reach them. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).